OPINION OF THE COURT
John P. DiBlasi, J.
This case presents another example of the all too prevalent practice of delaying the service of a notice of expert for the *753 purpose of gaining a tactical advantage over an opponent. Based upon the facts involved at bar, the court concludes that the imposition of a financial penalty against defendant’s counsel is warranted, and that plaintiffs should be granted leave to retain an additional expert witness.
FACTUAL BACKGROUND
Plaintiffs commenced this action on February 27, 1995, seeking to recover damages for injuries sustained by plaintiff Helene Marks as a result of complications which developed after she underwent eye surgery performed by defendant. It is alleged by plaintiffs that defendant’s malpractice caused Helene Marks to lose her vision in one eye.
On June 15, 1996, during the early stages of this action, plaintiffs served defendant with a notice for discovery and inspection. Included as item six in that notice was plaintiffs’ demand for defendant’s expert witness information. In a response dated August 8, 1995, defendant stated that "[e]xperts have not yet been retained”, but that ”[w]hen they are, a supplemental response will be served pursuant to CPLR 3101(d)” (plaintiffs’ affirmation, exhibit B).
Thereafter, on March 4, 1996, counsel for the parties appeared at a preliminary conference before Justice Peter P. Rosato of this court. At that time, the parties entered into a preliminary conference order which established various dates for compliance with pretrial discovery procedures. The order signed by Justice Rosato specifically set the date of July 1, 1996 as the end date for all disclosure.
Pursuant to the terms of the preliminary conference order, an examination of Helene Marks was conducted by Dr. Bruce L. Gordon (Dr. Gordon), an opthamologist, on May 21, 1996. Notwithstanding that Dr. Gordon prepared a written report dated June 14, 1996, defendant did not serve plaintiffs with a copy of that report until January 29, 1997, more than seven months after it was prepared, and just under seven months from the end date for disclosure as directed in Justice Rosato’s preliminary conference order.
Plaintiffs filed a trial note of issue in this action on January 2, 1997. Subsequently, plaintiffs were granted a trial preference, and the case was scheduled for trial on September 3, 1997. Then, on August 1, 1997, just 33 days prior to the date set for trial, defendant served an expert witness notice upon plaintiffs for the first time.
In response to defendant’s notice, plaintiffs moved by order to show cause for various relief. Specifically, plaintiffs seek an *754 order striking defendant’s expert notice and precluding defendant from offering any expert witness testimony at trial, or in the alternative, directing a deposition of defendant’s expert by plaintiffs, and granting leave to plaintiffs to retain and notice an additional expert.
When counsel appeared before this court for argument on the motion, defendant’s counsel, Judith A. Aydelott (Aydelott), was asked why the expert witness response was not served until August 1, 1997. Aydelott claimed that the delay was due to the fact that she had retained an expert only within the past few months. Nevertheless, when this court asked when the expert was retained, and when his report was received by her, Aydelott could not offer any details as to the chronology of those events. Accordingly, the court adjourned the motion and directed that Aydelott appear on September 24, 1997 and be prepared with the information necessary to respond to the court’s questions.
On September 24, 1997, counsel for the parties again appeared for argument on the motion. At that time the court was informed by Aydelott that she contacted an expert and provided him with all relevant materials on January 29, 1997. She also stated that she received a verbal report from her expert witness on May 19, 1997. When questioned as to why she waited until July 31, 1997 to serve her expert witness response upon plaintiffs, Aydelott argued that her trial schedule and other responsibilities prevented her from serving the response earlier. However, neither during oral argument, nor in her papers opposing the motion, did Aydelott offer any details of the efforts made by her to retain the services of an expert, and to provide a timely response to plaintiffs’ expert witness demand. To the contrary, defendant’s counsel merely offered general statements such as that "[i]t was only after discovery was completed and it was determined that this case would proceed to trial, that [she] began the expensive and time-consuming process of retaining an expert” (affirmation in opposition ¶ 11).
defendant’s COMPLIANCE WITH CPLR 3101 (d)
As is readily apparent, the central issue on plaintiffs’ motion is whether defendant has complied with the requirements of CPLR 3101 (d) (1) (i). In relevant part, that section provides that: "Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on *755 which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert’s opinion. However, where a party for good cause shown retains an expert an insufficient period of time before the commencement of trial to give appropriate notice thereof, the party shall not thereupon be precluded from introducing the expert’s testimony at the trial solely on grounds of noncompliance with this paragraph. In that instance, upon motion of any party * * * the court may make whatever order may be just.” Defendant argues that CPLR 3101 (d) (1) (i) does not create a time limit in which a party must serve an expert witness response, and that her service of a response more than 30 days prior to the scheduled trial date satisfies her obligations under the CPLR.
It is true that CPLR 3101 (d) (1) (i) "does not require a party to retain an expert at any specific time nor does it mandate that a party be precluded from proffering expert testimony merely because of noncompliance with the statute” (Lillis v D’Souza, 174 AD2d 976 [4th Dept 1991], lv denied 78 NY2d 858 [1991]). For that reason, the court does not agree with plaintiffs that defendant was necessarily required to serve her expert witness response by the end date for discovery as set forth in Justice Rosato’s order, or even by the date the trial note of issue was filed (see, Krajewski v Rosinski, 212 AD2d 886 [3d Dept 1995]). However, the court also rejects defendant’s argument that she has satisfied the requirements of CPLR 3101 (d) (1) (i) because she has complied with the "accepted practice” of serving her expert witness response within 30 days of the date of trial.
The court is aware that many counsel labor under the impression that as long as they serve their expert witness disclosure within such a 30-day "window”, they have satisfied their obligations under CPLR 3101 (d) (1) (i). Indeed, some authority for that understanding exists by virtue of the decision of the Appellate Division, Third Department, in Krajewski v Rosinski (supra, at 887), wherein that Court affirmed a trial court order directing plaintiffs to serve their expert witness disclosure "at least 30 days before trial, rather than immediately upon filing their note of issue”.
Moreover, the court is aware that in Krajewski (supra, at 887), the Court stated that the trial court’s 30-day before trial order "complied with [that Court’s] interpretation of the statute” in Bauernfeind v Albany Med. Ctr. Hosp. (195 AD2d 819, *756 820 [3d Dept 1993], lv denied 82 NY2d 885 [1993]). Nevertheless, this court does not interpret Bauernfeind or Krajewski as establishing a fixed 30-day minimum period prior to trial for service of an expert witness response.
This court’s view that there is no such 30-day rule is supported by the Bauernfeind Court’s own conclusion that notwithstanding that CPLR 3101 (d) (1) (i) does not establish a specific time frame for the service of the expert witness notice, "[i]t was incumbent upon plaintiff [therein] to disclose the expert information as close to the date of retention as reasonable” (Bauernfeind v Albany Med. Ctr. Hosp., supra, 195 AD2d, at 820 [emphasis supplied]). This standard of reasonableness is consistent with the established principle that where a party retains her expert close to the date of trial, she must provide good cause for her delay in complying with CPLR 3101 (d) (1) (i) (see, Cramer v Spada, 203 AD2d 739, 740 [3d Dept 1994], lv denied 84 NY2d 809 [1994]; see also, Vigilant Ins. Co. v Barnes, 199 AD2d 257 [2d Dept 1993]).
In addition, this court’s conclusion that there is no rule fixing 30 days as the minimum time in which an expert witness response shall be served is consistent with the views of the Appellate Division of the judicial department in which this court is located. For example, in Vigilant Ins. Co. v Barnes (supra), plaintiff served an expert witness response more than one year after a demand for such information was served by defendant, and its response did not include the names of its three expert witnesses. Just three weeks prior to the trial date, plaintiff disclosed those names to defendant. On appeal, the Appellate Division, Second Department, affirmed the trial court’s order precluding plaintiff from offering the testimony of the three experts. Obviously, such relief was granted despite the fact that all of the necessary expert opinion information was provided well before trial, and the missing names were disclosed close to the 30-day time period found acceptable by the Appellate Division, Third Department, in Krajewski v Rosinski (supra) upon which Aydelott relies.
Further, it is clear from the decisions in Vigilant (supra) and in Corning v Carlin (178 AD2d 576 [2d Dept 1991]), that the interpretation of CPLR 3101 (d) (1) (i) in the Second Department is not as liberal as that adopted in the Third and Fourth Departments. Thus, in Lillis v D’Souza (174 AD2d 976, supra), the Appellate Division, Fourth Department, held that in the absence of a showing of intentional or willful nondisclosure and prejudice to plaintiffs therein, defendants could not be *757 precluded from offering the testimony of their expert witness, notwithstanding that they first retained him only one week prior to trial, and did not serve their expert witness response upon plaintiffs until the second day of trial. To the contrary, in Corning, the Appellate Division of this department ruled that preclusion was properly granted where the plaintiff offered an expert as her first witness at trial, without ever having served an expert witness response on defendant, and in the absence of any good cause for such failure. In doing so, the Court specifically stated that "[t]o the extent that the decision * * * in Lillis v D’Souza * * * may be read to be contrary, we decline to follow it” (Corning v Carlin, supra, 178 AD2d, at 577).
In this case, Aydelott asserts that once she realized that the case would proceed to trial, she began her efforts to retain the services of an expert witness. She further contends that given the expense and the time required to retain an expert, her service of an expert witness response within 30 days prior to the scheduled trial date was reasonable. This court is not persuaded by these arguments.
It is not disputed by Aydelott that a physical examination was conducted of Helene Marks by Dr. Gordon on May 14, 1996. Nor does she deny that Dr. Gordon prepared a report dated June 14, 1996, and that such report was not served upon plaintiff until January 29, 1997. Significantly, Aydelott does not explain why, assuming that Dr. Gordon is not or could not be utilized as defendant’s expert witness, she did not immediately begin seeking the services of another opthamologist until the date she served Dr. Gordon’s report on plaintiffs, rather than at some earlier stage after Aydelott received Dr. Gordon’s report. Aydelott also fails to offer any explanation of the particular efforts made by her to retain the services of an expert from the point, undefined by her, when she first concluded that this matter would not be resolved without trial. In addition, she does not attempt to explain what efforts she made to obtain a "verbal report” from her expert at any time during the four-month period from when she retained him and provided him with the relevant materials for his review until May 19, 1997, when his "verbal report” was purportedly obtained. Further, Aydelott has not addressed, much less adequately explained, why she did not provide plaintiffs with notice of her expert until six months after he was retained. Finally, and most importantly, she fails to account for the passage of almost l1/2 months from when she received the verbal report until she served the expert witness response upon plaintiffs’ counsel.
*758 Taken together, the facts before this court do not support the conclusion, offered by Aydelott, that she served defendant’s expert witness response within a reasonable period of time prior to trial. Rather, such unexplained delay bespeaks of, at best, a lack of diligence, and at worst, an attempt to obtain some type of tactical advantage over plaintiffs’ counsel.
Regardless of the particular motive for the delay in serving the expert witness response, what is clear is that, contrary to her obligations under CPLR 3101 (d) (1) (i), and notwithstanding plaintiffs’ demand for such information almost 14 months earlier, defendant did not "disclose [her] expert information as close to the date of retention as reasonable” (Bauernfeind v Albany Med. Ctr. Hosp., supra, 195 AD2d, at 820). In light of that determination, and defendant’s failure to provide good cause for her delay in complying with CPLR 3101 (d) (1) (i) (see, Vigilant Ins. Co. v Barnes, 199 AD2d 257, supra), plaintiffs are entitled to some relief on their motion.
[Portions of opinion omitted for purposes of publication.]